### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| RAY LEE RANSOM, JR., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:19-CV-00708-CAN |
| § | |
| COMMISSIONER, SSA, § | |
| § | |
| Defendant. § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security ("Commissioner") finding Plaintiff was not underpaid supplemental security income. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be **AFFIRMED**.

### PROCEDURAL HISTORY OF THE CASE

On April 29, 2015, Plaintiff Ray Lee Ransom, Jr. ("Plaintiff") filed an application for supplemental security income ("SSI") under Title XVI of the Social Security Act [TR 207-12], alleging disability beginning on May 1, 1991 [TR 270]. Plaintiff's application was approved and Plaintiff was sent notice on February 26, 2016, that, as of April 2015 he met all the rules to be eligible for SSI, and he was entitled to receive SSI payments from March 2016 on; the notice advised Plaintiff he was entitled to back payments for May-August 2015 and November 2015-February 2016 [TR 213]. On April 22, 2016, Plaintiff received a further notice from the Social Security Administration ("SSA") informing him that upon consideration of *Martinez* he was not eligible to receive backpay for the time period of August 2007-November 2011 because his total

income was too high [TR 237]. The Notice expressly states his "fugitive felon status did not affect [the SSA's] ability to pay [Plaintiff]" [TR 238].

Plaintiff requested a reconsideration of the decision on May 17, 2016 [TR 241]. Upon reconsideration, on January 13, 2017, this time referencing *Clark*, the SSA reaffirmed its earlier decision, stating: "the excess income decision on the *Clark* relief was correct" [TR 241-43].[1] Plaintiff disagreed with this decision and requested an administrative hearing ("Hearing") before an Administrative Law Judge ("ALJ") on January 18, 2017 [TR 244]. An initial Hearing was held on January 9, 2018 [TR 99-156]. On March 13, 2018, the ALJ issued a partially favorable decision, stating Plaintiff was overpaid benefits for the period of August 2007 and November 2011, but that the amount of overpayment needed to be recalculated [TR 32-37].[2] The ALJ found Plaintiff's wages from his alleged drug dealing were not to be used in any computation, but that Plaintiff had self-employment income in 2008, and also acknowledged receiving free food and shelter [TR 36-37]. The ALJ specifically found that Plaintiff had an earned income of $12,097.00 in 2008 [TR 37]. And "that the $12,097 earned in self-employment in 2008 constituted income/excess resources in 2008. The money alleged earned from drug dealing has not been proven and is thus not counted as income/excess resources" [TR 37]. The ALJ determined that Plaintiff was eligible for benefits during the period of August 2007 to November 2011 but was liable for a portion of overpayment during the same period [TR 37]. Relevant herein, the ALJ relied on both Plaintiff's own testimony admitting his work and earnings in 2008, and an IRS transcript, in finding that Plaintiff had earned income in 2008 that should be considered in

---

[1] The ALJ's Decision recites that the SSA initially notified Plaintiff that pursuant to his request for *Martinez* relief, he was not entitled to SSA [TR 23]. In the reconsideration the SSA affirms the earlier decision although it was stated in the reconsideration his request was for *Clark* relief rather than *Martinez* relief [TR 23]. On January 18, 2017, the SSA issued a notice stating the January 13, 2017 notice should have stated *Martinez* relief rather than Clark relief [TR 23].
[2] Plaintiff became ineligible to receive benefits from November 8, 2011 to January 5, 2015 due to his incarceration [TR 65]. *See* 20 C.F.R. § 416.211(a)(1) ("you are not eligible for SSI benefits for any month throughout which you are a resident of a public institution").

MEMORANDUM OPINION AND ORDER – Page 2

recalculating Plaintiff's benefits [TR 37]. SSA recalculated Plaintiff's benefits pursuant to the ALJ's decision from the initial hearing and provided notice to Plaintiff of his recalculated benefits on March 16, 2018 [TR 323-25].

Plaintiff again requested reconsideration of the SSA's calculation of benefits on March 23, 2018 [TR 334-38]. Plaintiff claimed his Title II benefits should not be included in his Title XVI payments because his Title II benefits were from *Clark* relief rather than *Martinez* relief [TR 334, 338]. Upon reconsideration on July 6, 2018, the SSA notified Plaintiff that *Martinez* relief did not apply to the type of warrant issued against him, but that he was a *Clark* class member [TR 339-42]. Plaintiff was further notified his SSI benefits were stopped in January 2008 because of the warrant and at that time it was determined Plaintiff had been overpaid from August 2007 to December 2007 [TR 339]. Plaintiff was further notified that "irrespective of whether it was *Martinez* or *Clark* relief, payments were subject to the regular payment, non-payment, and reduced payment provisions" of the Act and that beginning January 2008 Plaintiff was ineligible for SSI benefits for twelve consecutive months due to excess income [TR 24, 339-40]. Plaintiff requested another Hearing before an ALJ on July 25, 2018 [TR 343-48], which was held on December 14, 2018 [TR 157-206].

At the Hearing, Plaintiff argued the SSA used *Clark* relief when they should have used *Martinez* relief in calculating his Title XVI benefits [TR 25]. The ALJ opined that the sole issue before him at the hearing is whether Plaintiff was underpaid Title XVI SSI benefits [TR 25]. After the second Hearing, the ALJ issued an unfavorable decision on March 28, 2019 [TR 20-30], finding the issue of whether Plaintiff qualified for *Martinez/Clark* relief need not be reached as Plaintiff had not been underpaid benefits and the SSA has correctly determined the amount of

benefit to which Plaintiff is entitled [TR 26]. More fully, at the second Hearing, the ALJ found as follows:

> The Administration has determined that *Clark* relief is the only applicable relief present in this case, but it is not necessary for the undersigned to determine whether the claimant is entitled to *Clark* relief and/or *Martinez* relief, as neither *Clark* nor *Martinez* provides the relief the claimant is requesting.
>
> The undersigned certainly acknowledges the inconsistencies in the Administration's determinations. Initially, the Administration issued notices purporting that the claimant was entitled to *Martinez* relief, but in the latest determination, explicitly finding that supplemental security income benefits were suspended based on a warrant for probation or parole violation (PPV) and was only entitled to *Clark* relief, as fully documented above in the section entitled "Jurisdiction and Procedural History." Although at times changing whether the claimant was entitled to *Martinez* or *Clark* relief, in the Administration's latest reconsideration determination prior to this hearing, the Administration emphatically determined the claimant was not entitled to *Martinez* relief and was only entitled to *Clark* relief [].
> ***
> However, I need not reach the issue as to whether he was entitled to *Martinez* or *Clark* relief. *Clark* relief provides:
>
> For all individuals whose benefits were suspended solely on the basis of an outstanding probation or parole violation warrant, SSA will fully reinstate all benefits retroactive to the date the benefits were suspended on an ongoing basis. However, if there is another basis for suspending benefits for any portion of the retroactive period or ongoing benefit period, SSA may suspend such benefits upon notice to the individual with appeal rights in conformity with SSA regulations. Unless otherwise provided, all payments to Class Members are subject to regular payment, non-payment, and reduced payment provisions of the Social Security Act.
> ***
> In this case, the record establishes that the claimant engaged in substantial gainful activity in 2008 earning $12,097.00. In the Hearing Decision rendered by Administrative Law Judge Walters, which is a final and binding determination, it was specifically held that the claimant earned $12,097.00 in 2008 constituting excess income. The claimant does not dispute the earnings in 2008, and at the current hearing, he acknowledged he worked in 2008 and was not entitled to supplemental security income benefits in 2008. . . Simply, the claimant was not eligible for Title XVI supplemental security income benefits in 2008, irrespective of his warrants, which he has acknowledged.
> ***
> Therefore, the claimant was not eligible for Title XVI supplemental security income benefits for the year 2008 (a period of 12 consecutive months) because of excess income and was not eligible for Title XVI supplemental security income

benefits from January 2009 to November 2011 because the benefits had been suspended for 12 consecutive months for another reason other than suspension for his warrants based on the recalculation.

[TR 26-28].

In sum, the SSA found Plaintiff was not entitled to relief under *Clark* because his benefits were suspended for a reason other than an outstanding warrant [TR 27]. By Plaintiff's own admissions, he had income in 2008 of $12,097.00 [TR 28]. Based on the amount of income Plaintiff earned in 2008, the ALJ determined that Plaintiff's income made him ineligible for SSI benefits [TR 28]. Further, Plaintiff was not eligible for benefits from January 2009 to November 2011 due to the twelve consecutive months of suspension of benefits in 2008 [TR 28]. Because Plaintiff's ineligibility of benefits was based on excess income and the suspension of benefits for twelve consecutive months, which resulted in termination of benefits, the ALJ found that he "need not reach the issue of whether *Clark* or *Martinez* relief applies" [TR 29]. The ALJ at the second Hearing thus determined that Plaintiff had not been underpaid benefits, and also that the SSA's calculation of benefits between August 2007 through November 2011 was correct [TR 29]. The ALJ opined Plaintiff had in fact been overpaid, but that such overpayment had been waived [TR 29].

Plaintiff requested review of the ALJ's decision by the Appeals Council on May 6, 2019 [TR 11-19], and the Appeals Council denied such request on September 10, 2019 [TR 5-7]. Plaintiff then filed the instant suit on September 30, 2019 [Dkt. 1].

## STANDARD OF REVIEW

In an appeal under § 405(g), the Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the

MEMORANDUM OPINION AND ORDER – Page 5

evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1985), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). It is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if the evidence is present to support the Commissioner's decision. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir.1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995).

## ANALYSIS

Plaintiff argues on appeal that the ALJ's decision is not supported by substantial evidence [Dkt. 20 at 1]. Specifically, Plaintiff asserts that (1) because he did not work for twelve consecutive months in 2008, the ALJ erred in finding that there was no underpayment of benefits; (2) the IRS transcript relied upon by the ALJ is not substantial evidence to support the SSA's decision to suspend benefits; and, (3) Plaintiff is entitled to payment of benefits for 2008 under

evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1985), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). It is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if the evidence is present to support the Commissioner's decision. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir.1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995).

## ANALYSIS

Plaintiff argues on appeal that the ALJ's decision is not supported by substantial evidence [Dkt. 20 at 1]. Specifically, Plaintiff asserts that (1) because he did not work for twelve consecutive months in 2008, the ALJ erred in finding that there was no underpayment of benefits; (2) the IRS transcript relied upon by the ALJ is not substantial evidence to support the SSA's decision to suspend benefits; and, (3) Plaintiff is entitled to payment of benefits for 2008 under

*Clark* [Dkt. 20 at 1-2].[3] Conversely, the Commissioner contends that the substantial evidence supports the ALJ's decision that Plaintiff's eligibility for benefits was properly terminated due to twelve consecutive months of benefit suspension [Dkt. 22 at 2]. Specifically, the Commissioner avers that Plaintiff's income in 2008 exceeded the maximum SSI benefits payable, and thus his benefits were properly suspended [Dkt. 22 at 3]. The Commissioner further asserts that the ALJ did not err in finding that there was no underpayment of SSI [Dkt. 22 at 2].

### *ALJ's Decision is Supported by Substantial Evidence*

To reiterate, Plaintiff avers that the ALJ's decision upholding the determination that Plaintiff had excess income, and therefore his benefits were properly suspended and terminated, is not supported by substantial evidence [Dkt. 20 at 1]. Plaintiff asserts that such suspension of benefits should only have occurred for the five months in which he worked (not the entire twelve month period), that his benefits were in truth suspended due to a warrant not excess income, and that an IRS transcript does not constitute substantial evidence on which the ALJ may rely [Dkt. 20 at 1-2]. The Commissioner asserts that such benefits were properly terminated based on the excess countable income Plaintiff earned during 2008 [Dkt. 22 at 2-3].

---

[3] Plaintiff asserts additional, new arguments in his "Brief[s] Not in Support of the Commissioner's Decision" (hereinafter "Reply Briefs") [Dkt. 23; 24; 25]; however, the arguments asserted in Plaintiff's reply briefs are not properly before the Court. *See Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("Reply briefs cannot be used to raise new arguments.") (citing *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008)). Although in its Order Directing Filing Briefs the Court stated "Plaintiff may serve, file, and submit to the Court a brief in reply to the brief of the Defendant within ten (10) days of service of Defendant's brief" [Dkt. 17 at 2], such order directs Plaintiff only to reply to the arguments raised by Defendant. This order does not permit Plaintiff to raise new arguments in his reply brief. The Fifth Circuit has repeatedly held that an argument not raised in the original briefing is not properly before the court. *See Butler v. Soc. Sec. Admin.*, 146 F. App'x 752, 753 (5th Cir. 2005) (In evaluating whether to consider an argument raised for the first time in a reply brief, the court held that "this court does not consider issues raised for the first time in a reply brief."); *Madrid v. Colvin*, No. 4:12-CV-800-Y, 2013 WL 6641305, at *6 (N.D. Tex. Dec. 17, 2013) ("The Court, however, will not consider issues raised for the first time in [plaintiff's] reply brief."); *see also Dotson v. Colvin*, No. 3:16-00997, 2017 WL 1164596, at *8 (M.D. Tenn. Mar. 29, 2017) ("an issue presented for the first time in a reply to a response is waived"), *report and recommendation adopted*, No. 3:16-CV-00997, 2017 WL 4005113 (M.D. Tenn. Sept. 12, 2017). The arguments Plaintiff raised in his Opening Brief are properly before the Court and will be addressed. Any new arguments presented by Plaintiff in his Reply Briefs are not properly before the Court for consideration.

**Excess Income and Suspension for Twelve Consecutive Months**

While Plaintiff continues to advance that his benefits were suspended due to a warrant, such argument is unavailing upon consideration of the record.  The ALJ held that because Plaintiff earned income in excess of the maximum SSI benefits payable for 2008, he was ineligible to receive SSI benefits [TR 29-30].

A person is eligible for SSI if he meets all the basic requirements listed in 20 C.F.R. § 416.202; eligibility is determined each month on the basis of countable income in that month. *See Hall v. Astrue*, No. CIV. SKG-09-1086, 2011 WL 502386, at *4 (D. Md. Feb. 10, 2011) ("For the purpose of determining SSI eligibility and benefit amount, income is defined as 'anything you receive in cash or in kind that you can use to meet your needs for food and shelter.'").  In calculating "countable income" the SSA considers earned income from different sources, as well as unearned income.  *See* 20 C.F.R. §§ 416.1100, 416.1104, 416.1111, 416.1121.  Under § 416.1111 the SSA lists multiple different types of earned income, one such type is "[n]et earning from self-employment."  20 C.F.R. § 416.1111(b); *see also Kinchen v. Astrue*, No. CIVA 08-5118-JCZ-SS, 2009 WL 3150312, at *3 (E.D. La. Sept. 24, 2009) ("Net earnings from self-employment income are included in earned income.").  The statute describes how the SSA calculates net earnings from self-employment: "We count net earnings from self-employment on a taxable year basis.  However, we divide the total of these earnings equally among the months in the taxable year to get your earnings for each month."  *Id.*  Thus, in calculating income from self-employment, the SSA is looking at the amount of income for the year, not the time spent working.  *See United States v. Shull*, 189 F. App'x 180, 183 (4th Cir. 2006) (discussing the difference between employee wages and incomed earned through self-employment and explaining that "employee wages count as income for the month in which the wages are actually received, while income earned through

MEMORANDUM OPINION AND ORDER – Page 8

self-employment is divided 'equally among the months in the taxable year'"). Further, under § 416.1112(c)(5), the SSA excludes $65.00 a month from earned monthly income. 20 C.F.R. § 416.1112(c)(5). Then, under § 416.1112(c)(7), half of the earned monthly income is excluded, to determine the amount of earned income that is countable for determining eligibility and benefit amount. 20 C.F.R. § 416.1112(c)(7). The SSA also includes unearned income in the calculation of countable income. Unearned income is a benefit derived from things such as annuities or payment plans, alimony or support payments, dividends and royalties, rents, death benefits, prizes and awards, gifts and inheritance, and support and maintenance in kind. *See* 20 C.F.R. § 416.1121. The SSA also excludes $20.00 worth of unearned income when determining an individuals' monthly income. 20 C.F.R. § 416.1124 (c)(12). In 2008, the maximum SSI benefit payable to an individual was $637.00. *See SSI Monthly Payment Amounts*, *1975-2020*, https://www.ssa.gov/oact/cola/SSIamts.html (last visited March 31, 2021); *see also* 20 C.F.R. § 416.405 (Cost-of-living adjustments in benefits).

Here, in determining Plaintiff's monthly countable income, the SSA considered the income from Plaintiff's online computer sales business, support and maintenance in kind, and DIB in calculating his countable income for 2008 [TR 323-25]. Plaintiff conceded that his earned income was $12,097.00 and was derived from self-employment [TR 109, 171, 179; Dkt. 20 at 1]. The SSA also relied on transcripts from the IRS, showing Plaintiff's taxes for 2008; evincing that Plaintiff earned $12,097.00 through self-employment [TR 264-69]. The SSA determined that Plaintiff was receiving $212.33 worth of unearned income, in the form of shelter and free food for 2008 [TR 323], as well as $413.00 in DIB [TR 238]. The SSA ultimately determined that Plaintiff had a countable income in excess of the maximum SSI payment in 2008 and found suspension of

Plaintiff's benefits was proper [TR 276, 278].[4] *See Saporito v. Comm'r of Soc. Sec.*, 248 F. App'x 311, 313 (3d Cir. 2007) ("The determination of whether an individual is eligible in a given month is based on whether the individual meets that requirements in that *same given month.* Suspension of payments due to excess income is effective as of the first month that the countable income is over the maximum amount.") (emphasis in original) (internal citation omitted). Upon review of the SSA's determination, the ALJ at the second Hearing correctly determined that the SSA had properly calculated and suspended Plaintiff's benefits for 2008 due to excess income.

Further, the ALJ was correct in holding that such suspension of Plaintiff's benefits for twelve months was due to excess income, not a warrant as urged by Plaintiff. As noted above, under § 416.1111, when an individual is self-employed his earnings from such self-employment are counted on a taxable year basis. 20 C.F.R. § 416.1111(b). This means that the income that Plaintiff earned during 2008, whether earned in one month, five months, or twelve months, is considered income for the entire year.

The SSA's regulations relating to the termination of benefits after suspension states:

> We will terminate your eligibility for benefits following 12 consecutive months of benefit suspension for any reason beginning with the first month you were no longer eligible for regular SSI cash benefits, federally-administered State supplementation, special SSI cash benefits described in § 416.262, or special SSI eligibility status described in § 416.265. We will count the 12-month suspension

---

[4] The Commissioner also completed this calculation in his Brief in Support of the Commissioners Decision [Dkt. 22 at 3]. "The maximum SSI benefit payable in 2008 was $637.00. *See* Social Security Administration, *SSI Federal Payment Amounts*, available at https://www.ssa.gov/oact/cola/SSIamts.html (last visited April 4, 2020). As noted above, the agency does not count all of the individual's income to determine his eligibility and benefit amount. 20 C.F.R. § 416.1100. Earned income from self-employment in a taxable year is divided equally among the months in the taxable year. 20 C.F.R. § 416.1111(b). Thus, based on 2008 earnings of $12,097.00, Ransom's monthly earnings are $1,008.08 ($12,097.00 ÷ 12). The regulations provide that $65.00 is first excluded from earned income in a month, 20 C.F.R. § 416.1112(c)(5), which in Ransom's case would leave $943.08 remaining ($1,008.08 - $65.00). One-half of that amount is then excluded, resulting in the portion of earned income countable for determining eligibility and benefit amount. 20 C.F.R. § 416.1112(c)(7). In this case, Ransom's countable earned income from self-employment would be $471.54 ($943.08 - $471.54). From Ransom's monthly unearned income, which includes Title II Disability Insurance Benefits of $413.00 and free food and shelter valued at $212.33, $20.00 is excluded, leaving $605.33 ($212.33 + $413.00 - $20.00). The total of Ransom's countable monthly income, therefore, was $1,076.87 ($471.54 + $605.33). This amount far exceeds $637.00, the maximum SSI benefit payable in 2008." [Dkt. 22 at 3, FN 2]

MEMORANDUM OPINION AND ORDER – Page 10

> period from the start of the first month that you are no longer eligible for SSI benefits (see § 416.1320(a)) or the start of the month after the month your special SSI eligibility status described in § 416.265 ended. This termination is effective with the start of the 13th month after the suspension began.

20 C.F.R. § 416.1335.

Plaintiff argues that because he only worked five months in 2008, his benefits should only have been terminated for those five consecutive months [Dkt. 20 at 4]. However, application of the plain language of the statutes shows that Plaintiff's income was considered to be earned over the entirety of 2008 and caused suspension of SSI benefits for twelve consecutive months. Moreover, as the Commissioner aptly notes, Plaintiff admitted on numerous occasions, contrary to his arguments before this Court, to working for the entirety of 2008, not just five months [TR 67 ("self-employed computer business from Jan 1, 2008-Dec 31, 2008"), 109 ("So, how long did that job last? Just a year."), 163 ("I should be paid from January 2009 all the way to November 2011, excluded from January 2008 from December 2008 because I worked"), 347 ("with the exception of January 2008 thru December 2008 – I'm owed my Title 16 SSI benefits")]. *See* 20 C.F.R. § 416.1335; *see also Quinn v. Astrue*, No. 2:10-CV-2170 DAD, 2013 WL 552522, at *3 (E.D. Cal. Feb. 13, 2013) (finding that where "plaintiff's benefits were suspended in February of 2004 [due to his improved financial circumstances] and he reapplied for benefits over one year later on June 23, 2005[,]" plaintiff's benefits were properly terminated under 20 C.F.R. § 416.1335 as his benefits were "suspended for twelve continuous months") (internal citations omitted). The suspension of Plaintiff's benefits for twelve consecutive months in turn warranted termination of his benefits under § 416.1335. *See Tammy McKaughan v. Commissioner Of Social Security*, No. 1:19-CV-0849 JLT, 2020 WL 5633031, at *3 (E.D. Cal. Sept. 21, 2020) ("Once benefits have been suspended 'for any reason' for twelve continuous months, a claimant's benefits will be terminated . . . Plaintiff's benefits were 'terminated in 2013 for non-medical reasons,' as Plaintiff

MEMORANDUM OPINION AND ORDER – Page 11

had excess income after receiving survivor's benefits in 2012.") (internal citation omitted); *Watkins v. Berryhill*, No. 3:16-CV-30117-KAR, 2017 WL 4365158, at *12 (D. Mass. Sept. 29, 2017) ("Plaintiff's record was automatically terminated because his benefit payments had been suspended for twelve consecutive calendar months."). The ALJ's decision to uphold the determination by the SSA in denying Plaintiff benefits for 2008 due to excess income is supported by substantial evidence.

**IRS Transcript**

Plaintiff also contends that the IRS transcript relied on by the ALJ is insufficient evidence, and that the ALJ should have obtained his actual tax returns [Dkt. 20 at 2]. However, the IRS was only able to supply the transcript due to the tax returns being destroyed in compliance with a document destruction policy approved by Congress [Dkt. 20-3]. Therefore, although Plaintiff argues his actual tax return should have been considered by the ALJ, that document is no longer available, and further, would not have altered the outcome of the countable income analysis *infra*. The Court further notes that there is no evidence in the record to support Plaintiff's claim that he asked the ALJ to subpoena the IRS for a 2008 tax return showing "the actual months [he] worked" [Dkt. 22 at 5 n.4 (citing Dkt. 20 at 3)], but that even had the ALJ subpoenaed such records, the IRS retained none to provide. Moreover, in addition to the IRS transcript, the ALJ relied on Plaintiff's own testimony admitting his work and earnings in 2008 in finding that Plaintiff had earned income in 2008 that should be considered in recalculating Plaintiff's benefits [TR 37].

**Clark *Relief***

Plaintiff also contends that he is entitled to relief under the decision in *Clark v. Astrue*, 602 F.3d 140 (2nd Cir. 2010). As set forth in the ALJ's Decision, dated March 28, 2019:

> Under the authority of the 20 CRF 416.535, where the claimant receives supplemental security income benefits of less than the correct amount, an

> adjustment may be effectuated. The amount of the underpayment is the difference between the amount paid to a recipient and the amount of payment actually due such recipient for a given period (20 CRF 416.538). If an underpaid recipient is alive, the amount of the underpayment due him or her will be paid to him or her in a manner provided by the Regulations found at 20 CFR 416.542.
>
> In a class action proceeding, on September 24, 2009, the United States District Court for the Northern District of California approved a nationwide class action settlement agreement in the case of *Martinez v. Astrue*. Generally, the *Martinez* settlement changes the types of arrest warrants used to prohibit payment of Social Security Retirement, Disability Insurance Benefits, and Supplemental Security Income Benefits.
>
> In *Clark v. Astrue* dated March 19, 2010, a separate class action proceeding, the Second Circuit United States District Court of Appeals held that the "Social Security Administration's practice of treating a warrant alleging a recipient was violating a condition of probation or parole as sufficient and irrebuttable evidence that the recipient was in fact violating a condition of probation or parole was inconsistent with the plain meaning of the Social Security Act."

[TR 26].

While Plaintiff asserts that he is entitled to *Clark* relief, such assertion is based on Plaintiff's belief that his benefits were suspended for twelve consecutive months due to a warrant rather than excess income [Dkt. 20 at 2, 4]. As noted *infra*, such an argument is unfounded. Although Plaintiff's benefits were suspended in August of 2007 due to a warrant being issued for his arrest [TR 18], such suspension was continued due to Plaintiff earning excess income. Starting in January 2008, Plaintiff was earning income in excess of the maximum SSI payment for 2008 and became in eligible to receive SSI benefits [TR 276, 278]. This ineligibility continued for twelve consecutive months based on monthly earnings, through December 2008, resulting in the termination of Plaintiff's SSI benefits. The SSA explained to Plaintiff in a letter dated July 6, 2018, that he was initially eligible to receive *Clark* benefits for the period his benefits were terminated for a warrant, but that such eligibility terminated upon his income exceeding the maximum SSI payment [TR 339-42]. The SSA explained that "[u]nder *Clark*, the period

considered for relief stops once it is determined SSI benefits have stopped or would have stopped for 12 consecutive months for reasons other than having a PPV warrant. As a result, you are not eligible for *Clark* relief for any month after December 2007" [TR 340]. *Giammarinaro v. Astrue*, No. 8:12-CV-2167-T-EAJ, 2013 WL 12157304, at *4 (M.D. Fla. Feb. 5, 2013) (In discussing *Clark* relief, the court found that the "SSA was directed to reopen all claims of class members who had been *denied SSI payments solely on the basis of an outstanding probation or parole warrant* and to determine benefits based on the original application date.") (emphasis added). Therefore, because Plaintiff's benefits were suspended for twelve consecutive months on a basis other than a warrant, the ALJ was correct in affirming the decision of the SSA that Plaintiff is not entitled to *Clark* benefits. *See* HALLEX I-5-4-70. *Clark v. Astrue* (IV)(1) ("For all individuals whose benefits were suspended solely on the basis of an outstanding probation or parole violation warrant, SSA will fully reinstate all benefits retroactive to the date the benefits were suspended and on an ongoing basis. However, if there is another basis for suspending benefits for any portion of the retroactive period or ongoing benefit period, SSA may suspend such benefits upon notice to the individual with appeal rights in conformity with agency regulations.") https://www.ssa.gov/OP_Home/hallex/I-05/I-5-4-70.html (last visited March 31, 2021).

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's Decision should be **AFFIRMED**. There was no underpayment of SSI.

**IT IS SO ORDERED**. **SIGNED this 31st day of March, 2021.**

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE